is United States versus Paul Johnson case number 16-15690. Mr. McDonald. Thank you, your honor. May it please the court, Ian McDonald, assistant federal public defender on behalf of the appellant Paul Johnson, Jr. A protective search under Terry must be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. That's the Supreme Court, Minnesota v. Dickerson, reciting the standard that applies to this case. If the search goes beyond what is necessary to determine if the subject is armed, it is no longer valid under Terry and its fruits will be suppressed. Again, Dickerson. And here, by not suppressing... But there's a little bit of a twist to that, right? Because the later cases indicate that you can continue grabbing something that may itself not be a dangerous weapon if the stop and the pat down are authorized at the first instance. Minnesota v. Dickerson authorizes the seizure of immediately apparent contraband. That's the other way. And here, the court found that in the district court's order that the officer did not know that Mr. Johnson had a prior felony conviction and thus could not have known that the bullet was contraband upon feeling it. So the government doesn't argue that it was contraband. We're left with the only lawful basis for the officer putting his hand into Mr. Johnson's pocket, continuing the search, being that he believed he felt a weapon which might be used to harm the officers or others nearby. And a bullet in a pocket is not a weapon that could use to harm the officers or others nearby. Doesn't the ammunition indicate the presence of a weapon that might be a danger to the officers nearby in the vicinity? Whether it could indicate the presence of a weapon nearby, seizure of the ammunition by further exploration of the pocket is going beyond the scope of what's permitted under Terry. And that's what the officer did here. He put his hand into the pocket and retrieved not only the bullet but also a holster. And we're seeking to suppress both of those things here. And the holster is much more indicative of the potential presence of a weapon than a single bullet, which a bullet could be, you know, a bullet keychain. The officer didn't know what it was. But the standard is, again, the search has to be limited to what is necessary for the discovery of weapons, which might be used to harm. Didn't the officer, though, say that he believed at the time that he, and there's no dispute that when he felt through the clothing of the defendant that he felt a bullet. I mean, wasn't the officer pretty clear about that? Correct, Your Honor. So he thought that with a bullet, you know, the weapon is dangerous when it has bullets. That he wanted to, that that caused him heightened concern that there was a safety risk. Isn't that a reasonable reaction of a police officer? And isn't the record of this case that that's in fact what he believed? What he said was, and the facts of this case also, you know, Mr. Johnson was handcuffed on the ground with multiple officers pointed, you know, with guns pointed at him. Here he had a single bullet in his pocket. That's not an instrument that could be used to harm the officer. The officer's testimony was, maybe there's a weapon, maybe there's another person in an apartment that may come out with something. And the facts in this case simply don't demonstrate that that weapon could have been a, I mean, that that bullet could have been a weapon that could have in any way been used to harm the officer or others nearby. Therefore, was your argument that because he was handcuffed and otherwise restrained by other officers that you could never go into his pocket even if you felt that there was a gun there? Not arguing for a bright line rule here, Your Honor, but I think under the circumstances of this case, there's no plausible basis that that single round of ammunition could have been used to harm the officer or others nearby. And that's the standard. And when the district court didn't suppress the bullet and holster, which were only found, the holster only found after going into the pocket, that did not apply the standard in Terry. And if you look at the cases here, you know, USV Clay, 11th Circuit, there the officer reached into a suspect's pocket after a pat down. The search continued, according to the court, only because he thought a long, thin object might be a screwdriver or something similar that might be used as a weapon. Ended up being a ballpoint pen, hollowed out barrel that's used for drug activity. But the only basis, the court was very clear, the search could continue only because he thought it might be a screwdriver or something that could be used as a weapon. Similarly, USV Knox, one of the cases cited in the government's brief, there during a pat down, the officer reached in, discovered an something resembling a knife, a weapon that could be used. The court didn't rule that he could seize the ammunition clip because it was an ammunition clip. It was because he believed it was a weapon that could be used to pose a danger. That's in this case where a police officer feels what he says he recognized as a bullet. So at that moment, the defendant knows that there is something in his is there by simply looking at the bullet after you take it out of their pocket. Well, there's a constitutional violation in putting your hand into the pocket because that's not necessary for the discovery of weapons which might be used to harm the officer or others nearby. Therefore, the officer had no reason to put his hand in the pocket or seize the bullet. And here they're responding, Mr. Johnson was outside his own home. He immediately, the officers came immediately, got him on the ground, handcuffed him. He wasn't doing the thing that they thought that they were called there for, which was a suspected burglary. He was merely outside his own home, got handcuffed and put on the ground and frisked. At that point, they didn't know there was anything illegal about the bullet. They didn't know anything about him, didn't ask him a single question before getting on the ground and handcuffing him. So they knew there was nothing illegal at that point in the officer's mind about the bullet and the bullet couldn't have been used as a weapon to harm the officer or others nearby. So the search under the strict law of the Supreme Court had to end at that point. Mr. McDonald, the Fourth Amendment generally gets interpreted through objective criteria, right? In a lot of circumstances, we look at what a reasonable officer would or should have or was permitted to do. But in the Terry scenario, there seems to be some element of subjectivity that goes into the analysis. What's your thought about that? In other words, do we look at what this particular officer believed or thought or imagined, or do we look at what someone in his position might have thought or would have thought or should have thought, or is it a combination of the two? It's what the officer could reasonably have believed. This officer or an officer in his position? An officer in his position. That standard is applied to this particular officer in the case. Here, what he believed, he felt. He testified immediately. He didn't say that he felt a hard object that might have been a weapon. He didn't say that he felt the holster. In fact, he was very specific. He did not know what the holster was until it was removed from the pocket. The only thing he felt was a single bullet, a small, what he described as a very small bullet. That's what he felt when he touched it. That's not a weapon that could be used to harm the officer or others nearby. The holster seems to me, at least instinctively, to be more of a difficult argument for you because a holster, at least in part, has the shape of a gun, right? I haven't looked at the transcript in a while to know exactly what the officer said about, to remember what the officer said about the holster, but you can imagine that if someone is doing a pat down and feels something that has the shape of a handgun, then they might reasonably think it's a handgun and then try to your argument is as strong with one as it is with the other. I think that's, I think you're absolutely right, your honor. I think that had he felt something that he thought was the shape of a gun and reasonably believed it was a gun, he would have been justified in seizing it, but that's not the fact here. You know, he's, Officer Williams testified specifically, which we reach into the pocket, found a nylon material, which we later found out was a holster, then asked in the supplemental transcript, when you say you found a holster, this is after you had already taken it out of the pocket, correct? Answer, correct. Is he asked what he, whether he even felt what turned out to be a holster when he was doing the pat down or whether he just missed it as he was going through it? Yes, he's asked, you testified what you felt to be a nylon piece of material, right? Correct. And then an oval shaped object. He testified he did not know what the holster was until he retrieved it. So there you have two items that we're seeking to suppress here. The bullet, which he says he felt, and then a holster, which he admits on the stand that he did not feel until he then further put it, you know, put his hand into Mr. Johnson's pocket, furthering the intrusion after he had already testified specifically that what he felt was a bullet, not a weapon, which could be used to harm the officers or others nearby. And that is where it ran afoul of the Fourth Amendment. That's the law. That's not the standard that the district court applied here. And because the officer did that, that is why the district court erred in failing to suppress the bullet and the holster. And it looks like my time is almost up. So for the reasons set forth today and in the briefing, I would respectfully request that the court reverse the district court's decision to deny suppression of those items. All right. Thank you very much, Mr. McDonald. Mr. Colan. Good morning. May it please the court. I'm Jonathan Colan on behalf of the United States. With me is Kerry Ivanovitz, the assistant U.S. attorney who handled this matter in the district court. Johnson's pat-down was justified under this court's Griffin decision based on the reasonable suspicion that a burglar would be armed. The subsequent retrieval of the into the pocket did not add to the officer's knowledge and was not what justified the subsequent area search of the crime scene, which discovered the weapons. Griffin, which I think I wrote, is a little bit different on its facts, is it not? Because there you had someone specifically identifying the individual as the suspected burglar. And so the police weren't just responding to a general suspicion of a burglar or burglary in the area, but of someone who was actually targeted by witnesses as the person who had committed the crime. And therefore, the inference of the person may be having a weapon kicked in. Not so here, though. Well, yes. In Griffin, we had people specifically say this is the guy. In this case, what we have is someone in around 4 a.m. at a report of an ongoing burglary. The officers testified they responded within about five minutes or less. And they found a person matching the description coming out of the area of the reported burglary scene. And in Griffin, this court cited as basis that what is sufficient to justify a search of a burglary suspect is that because burglary is a type of offense normally and reasonably expected to be armed, police do not require additional information suggesting the suspect may be armed before they search someone reasonably suspected of being a burglary. Right. The last part is the key, it seems. Yeah, I believe it is, Your Honor. And someone coming out at 4 a.m., there was no one else in the area, matching the description of an ongoing burglary within five minutes. Where was the burglary alleged to have taken place? In a duplex home area. The person came out of the alleyway. That was where the scene was. It was dark. He was the person coming out. He matched the description. It was within five minutes or less, the officers said, of the report. I think that is sufficient basis for the officers to conclude that this is that someone reasonably suspected of being a burglar to justify the initial Terry stop and frisk. And in fact, the defense doesn't even challenge... So if this had happened at a time other than 4 a.m., would your position be the same? Not necessarily, Your Honor, because in a case where... I mean, all the facts add together. The reason the 4 a.m. is an important fact is because it's a reasonable conclusion for officers to make that when you arrive somewhere at 4 a.m., there aren't a lot of people around. If someone is there at the site of a reported ongoing crime at 4 a.m., matching the description, and there's no one else around, this is probably the person who is the object of the report. And in fact, the defense doesn't even... My question is, would your position remain the same if the timing were different, if this were 11 o'clock in the morning, let's say? I think our position would be weakened because at 11 a.m., there is less... People aren't generally around outside between buildings at 4 a.m. As 11 a.m., they are. So the that justified the initial detention. And as I think is important to note, the defense does not dispute the basis for the initial detention. That's been... The magistrate and the district court have made that... Have noted that. The initial detention of the burglary suspect isn't being challenged. So I think it was reasonable... In these cases, you take it step-by-step to see what was in the investigation. So when you come to a crime scene within 5 minutes at 4 a.m., find someone matching the description. And in fairness, the description was a black man with a white shirt. Yes. So going back to Judge Jordan's question, if this were 11 a.m. and the officer spotted a black man in a white shirt, that's not very specific, right? Yeah. At 11 a.m. would make this a weakened case because you would have less reason to think, why is someone around at all at 11 a.m. and 4 a.m.? At 4 a.m., there's less reason for him to be there at all unless he's the person that was the subject of the call. At 11 a.m., it's more likely to find people around. Even if he's the only one? Even if he's the only one. It would be a weakened case at 11 a.m. But given that this was a report in a high crime area, I mean, taking it step by step, when you reach the crime scene within less than 5 minutes at 4 a.m. and find someone, even an African American male wearing a white shirt, coming from the area exactly where the crime was said to be going on, walking out of that dark alley next to the home, it is reasonable to stop that person and conduct the Terry stop and frisk. As I said, the initial Terry stop is not even being challenged. It's only what happens once he starts patting him down that's being challenged. Let's go on to that for a second. How would it be reasonable for a police officer generally, even if they felt what they thought was a bullet, to say that that created a danger, and the danger being some disassociated bullet from some maybe firearm that he couldn't access because he's detained? What justifies the removal of anything from his pocket? The officers at this point, again, you take what do they know at the time and what is their step-by-step approach to investigation. What they knew at the time, they've already identified that it's a bullet. They know it's an ongoing burglary that they've been called to report to. They know that this is an area with armed burglaries being common, and this court has found that it is reasonable for officers to assume that a burglary suspect is or would have been armed. What the officers testified to is that once he identified the bullet, he retrieved it just for officers safety. I'm going to quote his testimony, just to try to make the scene secure as much as possible. How could the seizure of a bullet from somebody's pocket in the absence of a gun lead a police officer to reasonably believe that that was necessary in order to protect officer safety? The interest in protecting officer safety, I think, leads to then two results. What are the two actions he takes in response to identifying the bullet? And the justification for each is a little bit different. I want to make that clear, because the issue of whether the retrieval itself was justified is separate from the issue of whether the area search of the crime scene for evidence and weapons is justified. Because ultimately, that's what's at issue in this case, the evidence of the guns that were found in the area search, which is search independent of the defendant's own Fourth Amendment interest. The search of the crime scene is independent of the defendant's Fourth Amendment interests. So even if this court were to find that retrieving the already identified bullet was unjustified, it would be a separate question as to whether the area search that found the weapons was justified. Now, the government cited cases like Scoggins, and the court has also noted that when officers doing a frisk find hard objects, even ones that they don't necessarily believe are guns, sometimes they pull them out just to put them down on the scene. And the standard in Dickinson for what is a violation is if there was a continued exploration beyond the pat-down. In this case, because the officers had already, Officer William testified that he had already identified the object he felt as a bullet, the retrieving of the bullet was not a continued exploration under Dickinson. Sure it was. Nobody challenges, well, I shouldn't say that. There's a difference between justifying the pat-down and then justifying the further Fourth Amendment intrusion, as the Supreme Court has characterized it, of reaching in and grabbing something in a person's jacket or pocket or something like that. Those are two separate things, are they not? Well, as your Honor said, having identified the bullet, looking at the bullet didn't add anything to the officer's knowledge or develop any further inculpatory evidence. Sure it does. Why do you think he wants to suppress it? Because then it makes your argument about being a felon in possession harder, and he might be willing to take his chances at a trial. But if they found the guns nearby and they also found a bullet on him, along with a holster, then it's much more likely that a jury is going to think, ah, those are your guns, because why else would you have a bullet and why else would you have a holster? Well, he wants to suppress it, and you're right that the Fourth Amendment search that led to the guns themselves may be totally different, but he may be willing to take his chances with a jury at that point in time. It can't be that you can always reach in once you've identified an object, right? I mean, if I am a pen connoisseur as a police officer, and I know that I just felt a Mont Blanc pen, I can't pull it out, right? You're right, Your Honor, but a bullet is not a pen. Understood. So why is it, going back to Judge Duffy's question, if context matters, and you've indicated that at least in some ways context matters, timing matters, why doesn't it matter that he is detained on the ground and restrained at the time that the extraction of the bullet occurs? Okay, there's a couple questions. I want to make sure I get them all. The, if you're asking about whether his being in restraints limits the search, I don't think it does, Your Honor, because even this court has noted in many cases, protective sweep circumstances, lots of circumstances, that when the officers are securing an area, the fact that a suspect is under control, even under handcuffs, doesn't limit the fact that someone even in handcuffs is capable of reaching around, and anything within the reasonable grasp of a defendant is something that officers can secure the area for and look for guns. I agree, but those are different Fourth Amendment rationales, like you said, a protective sweep. We're not dealing with those here. We're dealing with going through some interior compartment of his clothing to pull something out. So why is officer safety triggered if he's on the ground, detained, restrained, and can't go anywhere? Again, the issue of the restraint, I want to address first and then move on to the bullet. The restraint itself does not limit the officer's ability to make sure a suspect isn't armed. You would not leave a possibly armed suspect, even a handcuffed suspect, sitting there with a gun in his pocket while you're investigating a crime scene. No, I agree with that. That goes to the initial pat. I understand that. But reaching in and grabbing it and taking it, how does that further officer safety if the suspect is detained, restrained, et cetera? It is of less concern to the officer, and I'll even grant you on it. If the court were to find that retrieving the bullet, pulling out something that they've already identified as a bullet to put on the ground next to him was not justified, again, the ultimate issue is then whether that affected the search that found the guns that the defendant later himself, after Miranda, admits he was holding and was in possession of holding for his brother and his cousin. I do want to correct... My understanding is that the bullet was the same caliber as one of the guns found. Yes. So there is a connection between that particular bullet and the guns that were found. And one of the guns, yeah. I want to make sure I do correct one misapprehension in the record. I'm sorry, Your Honor. We would not want to interrupt you from correcting a misapprehension. So let's do that first. Judge Jordan, you had asked about the feeling of the holster. And I want to make sure that this is clear because the holster was not something that the officer could feel on the outside was a holster. That was something that the officer did not identify as a holster until it was pulled out. And he didn't need to pull it out because he didn't think it was a weapon? No, but... Then what's the justification for getting it? He was simply pulling... In his mind, he was simply putting down the objects that he had felt. He was doing a search incident to arrest without an arrest. In his mind, he was just continuing his frisk, but... But that's a search incident to arrest, is it not? I mean, the Dickerson, the Terry Dickerson rationale is not the same. There are overlaps, but it's not the same exact thing as a search incident to arrest. In any event, Judge Duffy had a question for you. Yes, Your Honor. I'm sorry. I got off the rails. I'm sorry. Let's see if I can remember it. So there are two things in the pocket. There's the holster and then there's the bullet. Yes. And I want to distinguish between those two. There is authority, including as late as last week in an unpublished decision by the circuit that says that something which is readily identifiable, that extracting that from a pocket or some other place on a person isn't any further violation of anybody's right, and that's not prohibited. Now, that might apply to the bullet, but does that apply to the holster? No, because as I said, the officer's testimony was that he felt something nylon, but did not identify it as a holster until he pulled it out. So even if the holster, separate from the bullet, were to be excluded, again, the ultimate issue is the fact that none of that was what justified the area search that found the weapons that the defendant later admitted to. That was, it's not fruit of the poisonous tree because that wasn't what justified, it wasn't an exploitation of retrieving the bullet or the holster that led the officers to search the area, the crime scene, for further evidence or the weapons that they thought would go with something that they'd already identified as a bullet before they reached into his pocket. That argument is not one you've made in your briefs, right? You're not asking us to affirm the conviction on the alternative ground that even if the bullet and the holster get suppressed, then his guilty plea is still valid. I believe Leonhardt did say that the search, that the denial of the motion to suppress would still have been correct because the search was independent and would have taken place regardless. But he's not just seeking to suppress the guns. He didn't just seek to suppress the guns, right? I mean, you can have a motion to suppress five things and you might only be successful on two of them and then you have to decide, okay, if three of them are coming in, what do I do? Do I take a guilty plea or do I go to trial? But you're suggesting that we can affirm the conviction even if we were to reject your argument and hold that part of the motion to suppress should have been granted? We're suggesting that... This is not a trial with a harmless error scenario. This is a guilty plea. Yes, Your Honor. Well, we're not conceding, of course, that any of it should have been suppressed. But if the court were to rule that some of it would be suppressed, I suppose it might have to go back for further proceedings. But the evidence... The guns certainly would not have been suppressed. If anything, the court would have to find what in particular is the evidence that should have been suppressed. Because he pled guilty to possession of a firearm and ammunition, correct? I believe that's correct, Your Honor. So if he has one bullet in his pocket and that's not suppressed, having pled to as a felon in possession of ammunition, that would still be a valid conviction, correct? Yeah, I mean, the bullet was independent of the region. The guns were independent of the region. And his plea was to possessing the guns that he admits to and the bullet which was identified before the search. Right, of course, but that answers part of the question, which is that if we were to reject your position, it has to go back down because at least one of the guilty pleas is in question, right? The guilty plea to possess, were there separate counts for the gun and for the ammunition, or was it a joint count? One count? I believe it was one count, Your Honor. I'm sorry. Okay. But I think what we're saying is that the bullet itself was identified independent of the region. So the court would have to find that the initial frisking was illegal in order to suppress the bullet. Therefore, we think that Mr. Johnson's... I'm sorry, Your Honor, about to ask me a question. I was going to say we have some work to do. Yes, Your Honor. All right. Well, we believe that the search, each step was justified and that the region did not taint any of the evidence and his conviction and guilty plea should be affirmed. Thank you very much, Mr. Colon. We appreciate it. Mr. McDonald, you've got your full five minutes. Thank you very much, Your Honor. Just to quickly touch on a couple of points the government made. The government... Did he... Before you do that, just to see if we can confirm the procedural aspect, the sole count joined together the ammunitions and the firearms? Correct, Your Honor. He was charged in a one count indictment, felon possession of the bullet and the two firearms. Okay, got it. Thank you. And before you get to... Let me raise a new point before you get to old ones that we've already discussed. You relied upon Clay in your argument before. Clay was a finding that there was a proprietary stop and then they asked the defendant if they could search his car and they said yes. And isn't that what happened here, that after he was initially detained in the stop, that they asked if he could search his pocket and he said that they could? The district court expressly refused to... Declined to make that finding. There was an adverse credibility determination that the magistrate had made about the officer's testimony on that. And the magistrate concluded, we need not consider whether Johnson consented to a search because they found there was a lawful frisk and the district court said Johnson's consent was irrelevant here. So that issue wasn't reached below. And in any event, in the record it says that Officer Williams testified that he began to pat Johnson's down, felt the hard object, and that's when he claimed that the supposed consent would have occurred. So any consent would have happened after the pat down on the object was already discovered. Well, it wasn't just a hard object. I think we've already had this discussion that it was in fact a bullet that he identified. Correct, that's what he subsequently clarified his testimony to what he believed the hard object to be, correct. So what does Griffin then stand... Doesn't it stand for the proposition that if you have an identifiable object to do a further search in order to retrieve the identifiable object, that that's no further violation of the defendant's constitutional rights? In Griffin, he was... In terms of the initial stop, there was a lot more information than there was here. They specifically knew a description of the person, a witness had told the officer he saw him recut, the person have a handgun, there was a... But you're not questioning the stop and the frisk, are you? Not questioning the stop, but questioning the frisk. I think that here... Or the extent of the frisk. Even the frisk itself, I think, is suspect under Griffin. Mr. Johnson, the only similarities between Griffin, which is the main case the government relies upon, and here are that it was in a purported high crime area and they were investigating an attempted theft. Here, none of the other factors that are present in Griffin. For instance, the officer was alone at night, surrounded with six to eight other people. Here, Mr. Johnson was alone, surrounded by multiple officers. In Griffin, the person acted evasively, refused to obey command to stop. So a lot of factors were present in Griffin that weren't present here. And the government touched on briefly, this court saying in Griffin that because burglaries are usually armed, that's sufficient to believe that someone is armed and dangerous, which is the standard for a frisk. But in Griffin, this court specifically declined to do that, declined to hold that burglary, being called to a burglary alone was sufficient. It said, we need not decide today whether to adopt such a categorical Terry rule. There, together with the attendant circumstances, these things I've just listed, evasive action, all of the other factors, officer alone, surrounded by people, is what drove the court's holding in Griffin. And the government also mentioned... I mean, there's lots of authority in the circuit that, especially in a high crime area, it's undisputed that this was a high crime area, that where somebody gets a call from a dispatcher saying there's a fellow who's trying to break into a home, he's wearing a white shirt and I think dark pants. And they end up going to the place where the burglary is supposed to be happening. And they find one person that meets that description shortly after they received the dispatch. And knowing that in a high crime area that other burglaries had been, that where firearms had been used, doesn't that have to present enough facts to show that at least the initial stop was allowed under Terry? Initial stop, but the frisk is a tougher question because here you just had... They said the government says context matters. It was, to the extent it matters, 5 a.m., not 4. We're getting closer to dawn. One person, black male, white shirt, only description they have. Nothing like reaching for a waistband, seeing a bulge, acting evasive, fleeing. Any of the other factors that courts would generally consider would lead an officer to reasonably believe the suspect was armed and dangerous. See that I'm running out of... In Terry, weren't the facts in Terry that some police officers across the street saw a guy furtively looking at a retail store in the Supreme Court in Terry where this all starts and that that was enough to have a Terry stop? In Terry, they saw several individuals walking by a retail store multiple times. I believe 10 to 12 times the officers saw these people. Two individuals look in the store, stop, come back, look in the store again, move down the block, confer, come back again. And I believe that case there, based on the officer's 20 plus years of experience, he believed that they were casing the joint. He went to investigate them. Three people, in fact, were present at the scene. One officer... No dispatcher sent a police officer saying, we have a report of a burglary. Somebody trying to break into a house. We want you to go and look into it. And by the way, here's who we want you to look for. A black male with a white shirt. It's 4.30 in the morning. I get up early. It hasn't been light at five o'clock for a long time in my history. Isn't that enough for somebody to have an investigatory stop? An investigatory stop, Your Honor, but as I argue in the briefs, there's the other factors that are typically there that justify the second aspect, which is the frisk, are just not present in this case. The court has no further questions. I would respectfully step forth in the briefing. And here, again, requested the court reverse the district court's decision to deny suppression of the Holstrom bullying. And what you would like is if we were to agree with your position, it's just simply to remand and then allow Mr. Johnson to decide what he is going to do. Correct, Your Honor. Okay. Thank you very much, Mr. McDonald. Thank you.